UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE G. GRAY, Jr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13cv2537 TCM |
| | ) |
| THE OUTSOURCE GROUP, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on the cross-motions of Lawrence Gray (Plaintiff) and The Outsource Group (Defendant) for summary judgment.

## Background

Plaintiff began work for Defendant on November 19, 2007, pursuant to a conditional offer of employment. (Taylor-Hanneken Decl. ¶ 5, ECF No. 73-4.) Defendant "is a revenue cycle management company." (Id. ¶ 4.) "It assists hospitals, physicians, and dentists in the collection of traditional past due accounts from both patients and commercial payers." (Id.)

When applying for employment, Plaintiff signed a release authorizing the Griffin Personnel Group (Griffin) to obtain copies of, inter alia, his criminal record. (Def. Ex. E, ECF No. 73-5.) Plaintiff's criminal history includes a suspended imposition of sentence imposed on a guilty plea in 2003 to a felony charge of theft of property or services with a value greater than $500 and less than $25,000. (Pl. Ex. G, ECF No. 77.) Plaintiff's employment with Defendant was terminated on November 20, 2007. (Taylor-Hanneken Decl. ¶ 5.)

At Defendant's directions, a letter dated November 19, 2007, was sent by Griffin to Plaintiff at the address listed on the release he had signed informing him that based on a report from the St. Charles County Judicial Circuit, Defendant was going to rescind its contingent offer of employment. (Def. Ex. I, ECF No. 73-9; Def. Ex. J, ECF No. 73-10.)

On November 21, Plaintiff went to Defendant's offices to discuss the results of his background check and to explain that they were not accurate. (Def. Ex. F, ECF No. 73-6.) Plaintiff met with Jessica Buhse, Defendant's Human Resources Administrator, and was told to get a correct copy of his background and provide it to Griffin. (Pl.'s Dep. at 88-89, 90, ECF No. 73-7.) Plaintiff told her he "was more than willing to give her [his] probation officer's name and number because it was important, that [he] needed the job anyway to be in good standing with his probation officer." (Id. at 89.) He testified in his deposition that she could have also gotten any documentation she needed from the probation officer. (Id.)

Plaintiff applied for nine positions with Defendant from 2010 to 2012. (Pl. Ans. to Inter. ¶ 6, ECF No. 73-8.) The only two applications at issue are ones made on November 19, 2012[1] – one for job requisition number 12-2819 and one for job requisition number 12-3155. (Pl. Dep. at 74; Mixon-Page Decl. ¶ 7, ECF no. 73-11.) Seventy-six people applied for number 12-2819. (Mixon-Page Decl. ¶ 12.) Kevin Dudley, an African-American man, was hired. (Id.) Sixty-two people applied for number 12-3155. (Id. ¶ 11.) Patria Shepard, an African-American woman, was hired. (Id.)

---

[1]The Court earlier granted Defendant's motion to dismiss allegations of discriminatory conduct that took place on or before March 10, 2012. Plaintiff's renewed challenge to that ruling is addressed below.

On January 4, 2013, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that he had been discriminated against by Defendant because of his race, African-American, and sex, male, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e through 2000e-17. (Def. Ex. A, ECF no. 73-1.) In the narrative portion of the charge, Plaintiff explained that he had been "terminated after just one day of employment due to a negative background check. At that time [he] was told that [he] could reapply for [his] position after [he] completed probation." (Id. ¶ 1.) He did often reapply, but was never hired. (Id. ¶ 2.) Plaintiff amended the charge on March 6, 2013, to additionally state that he had filled out an online assessment test in January 2013 but had not yet been contacted for an interview. (Def. Ex. B ¶ 3, ECF No. 73-2.) The charge was again amended on April 15 to add that he had been retaliated against because of his race and sex. (Def. Ex. C ¶ 4, ECF No. 73-3.) The description of the complained-of acts was not changed.

Ms. Mixon-Page, Defendant's Regional Human Resources Manager, avers that Plaintiff was not hired because of his poor work history as listed on his candidate profile. (Mixon-Page Decl. ¶ 10.) A "stable work history" is viewed by Defendant "as a critical attribute in hiring because [Defendant's] investment of training time and resources for its Collections staff is significant." (Id.) She further avers that she was unaware of Plaintiff's race or criminal history when screening his candidate profile or assessment. (Id. ¶ 8.)

Plaintiff counters that Defendant kept his incorrect background check from 2007. (Pl. Dep. at 75-76.) Moreover, neither Mr. Dudley nor Ms. Shepard are more qualified than he is. (Pl. Resp. at 8-9, ECF No. 82.) The real reason they were hired and he was not is that he was and is being illegally labeled as a "Black Male Convicted of a Felony." (Id. at 9.)

Plaintiff's candidate profile lists seven jobs between 1998 and February 2013. (Pl. Ex. A,[2] ECF No. 77.) In 1998 and 1999, he worked in customer services and collections for one company, and left that position in 1999 to work in the same field for another company for better wages. (Id.) In 2000, he left that second employer to work for MCI WorldCom. (Id.) He was laid off in 2003, and then went to work as an inventory clerk for RGIS. (Id.) In 2004, he left that employer for the Transportation Security Administration (TSA). (Id.) He was discharged from TSA in 2005. (Id.) In May 2005, he began work in the warehouse of V.I.P. Delivery Systems. (Id.) He was laid off in September 2005. (Id.) In September 2008, he began work with Barnes-Jewish Hospital as an orderly transporting patients. (Id.) He left this job on January 26, 2009. (Id.)

Mr. Dudley's candidate profile lists four jobs between 2004 and February 8, 2013. (Def. Ex. P at 1, ECF No. 73-16.) The first was as an account representative in collections for GC Services from September 2004 to November 2005. (Id.) From November 2005 to April 2006, he worked as a security officer/receptionist for Allie-Barton Security Services. (Id.) From April 2006 to December 2008, he worked as a pharmacy technician associate for Express Scripts. (Id.) And, from December 2008 to June 2011, he worked as a manufacturing engineering technician for Covidien. (Id.) He was laid-off from this job. (Id. at 4.) He obtained an Associates of Arts Degree in Secondary Education in May 2007. (Id. at 1.)

---

[2]Several exhibits, including Plaintiff's candidate profile, are submitted by both parties. In such instances, the citation to a particular submission does not imply any deference to that party's position.

Ms. Shepard's candidate profile listed four jobs between 1998 and February 8, 2013. (Def. Ex. O at 2, ECF No. 73-15.) The first was as a customer service representative for Value City Department Store from 1998 to 2006. (Id.) The second was as a customer service representative in the collections department of Consumer Adjustment Corporation from 2006 to 2008. (Id.) From 2008 to 2009, she worked in the customer service department of U.S. Bank. (Id.) And, from 2011 to the time of her applications, she was working as a customer account executive for Convergys. (Id.)

Defendant argues in its motion for summary judgment that there is no evidence of discrimination, including disparate impact or disparate treatment, toward Plaintiff and that he was not hired for either of the two positions at issue because he was not the most qualified candidate. Plaintiff argues in his motion that the gaps in his employment history – events which were out of his control – are pretexts for not hiring him because Defendant illegally stereotypes as a black man with a felony conviction. He further argues that the discrimination began in 2007 and has caused him not to be hired each time he applies for employment with Defendant.

## **Discussion**

Summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure "is proper when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law." **Rester v. Stephens Media, LLC**, 739 F.3d 1127, 1130 (8th Cir. 2014). Accord **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013). The existence of a factual dispute is not enough

alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." **Hammer v. City of Osage Beach, Mo.**, 318 F.3d 832, 837 (8th Cir. 2003). "To establish a genuine issue of material fact, [the movant] 'may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [the movant's favor].'" **Fatemi v. White**, 775 F.3d 1022, 1040 (8th Cir. 2015) (quoting Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)). And, "[t]here is no discrimination-case exception to a district court's power to grant summary judgment." **Ebersole v. Novo Nordisk, Inc.**, 758 F.3d 917, 923 (8th Cir. 2014) (citing Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)).

Direct Evidence. To prevail on a Title VII discrimination claim, the plaintiff "'must show either direct evidence of discrimination or evidence that is sufficient to create an inference of discrimination under the *McDonnell Douglas*[3] burden shifting framework.'" **Fatemi**, 775 F.3d at 1040 (quoting Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1050 (8th Cir. 2013)) (footnote added). "'[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" **Moody v. Vozel**, 771 F.3d 1093, 1096 (8th Cir. 2014) (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004)) (alteration in original). "Direct evidence of discrimination must relate to people with decision-making authority; 'stray

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

remarks in the workplace and statements by nondecisionmakers' are not direct evidence." **Id.** (quoting Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006)).

In his response to Defendant's statement of uncontroverted facts, Plaintiff states that he has direct evidence that illegal discrimination has taken, and continues to take, place. (See Pl.'s Resp. at 10, ECF No. 82.) He does not state, however, what this evidence is. Rather, in his motion for summary judgment, he argues that he has established a prima facie case of disparate impact, disparate treatment, and retaliation.

Disparate Impact. Under Title VII, unlawful disparate impact is established "'only if' . . . 'a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race [or sex], . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.'" **Bennett v. Nucor Corp.**, 656 F.3d 802, 817 (8th Cir. 2011) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)) (second alteration in original). "To establish a *prima facie* case of disparate impact under this provision, the plaintiff[ ] must show: '(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two.'" **Id.** (quoting Mems v. City of St. Paul, 224 F.3d 735, 740 (8th Cir. 2000)). "[O]nce the plaintiff establishes a prima facie case the employer must show the practice at issue is 'related to safe and efficient job performance and is consistent with business necessity.'" **EEOC v. Dial Corp.**, 469 F.3d 735, 742 (8th Cir. 2006) (quoting Firefighters Inst. for Racial Equality v. City of St. Louis, 220 F.3d 898, 904 (8th Cir. 2000)). "An employer using the business necessity defense must

prove that the practice was related to the specific job and the required skills and physical requirements of the position." **Id.** "If the employer demonstrates business necessity, the plaintiff can still prevail by showing there is a less discriminatory alternative." **Id.**

Defendant has submitted the affidavit of Ms. Mixon-Page that Mr. Dudley and Ms. Shepard were hired for the November 2012 openings because they had a more stable work history than did Plaintiff and that such a work history is viewed by Defendant as a critical attribute. She further avers that she was unaware of Plaintiff's criminal history when she screened his candidate profile. Plaintiff counters that Defendant's recruiters are instructed to review a candidate's personnel file and, although his background check correctly showed a suspended imposition of sentence, the illegal stereotype of him as a black male with a felony conviction establishes disparate impact.

Plaintiff's argument fails for several reasons. First, as noted above, in response to Defendant submitting evidence that it believes demonstrates the absence of a genuine issue of material fact, i.e., whether Plaintiff's criminal record was considered when screening him for the two November 2012 jobs, Plaintiff "'must come forward with specific facts showing that there is a genuine issue for trial.'" **Gibson v. Am. Greetings Corp.**, 670 F.3d 844, 853 (8th Cir. 2012) (quoting Torgerson, 643 F.3d at 1042). He has failed to do so. The only evidence Plaintiff submits in support of this allegation is a three-page document outlining the criteria for whether an applicant's employment and criminal records are to be rated as pass, hold, or fail. ( Pl. Exs. C & D, ECF No. 77 at 13-15.) The document is identified only as Defendant's "Pre-employment Screening Parameters." Although it defines how an applicant is to be rated in terms of his or her criminal history, it falls far short of establishing the

existence of an genuine issue of whether Ms. Mixon-Page was aware of Plaintiff's criminal history when screening his candidate profile.

Second, even if Plaintiff had established that his criminal record[4] played a role in the decision not to interview him for the two openings, he has not established that a policy not to interview applicants with criminal histories has a disparate impact on a *protected* class. "Persons with criminal records are not a protected class under Title VII." **Manley v. Invesco**, 555 Fed.App'x 344, 348 (5th Cir. 2014) (per curiam) (rejecting plaintiff's Title VII claim that he was illegally not hired because employment agency had policy of not referring applicants with criminal record).

Third, insofar as Plaintiff contends that a disparate impact exists because it is "obvious" that "[m]inorities are arrested at a much [h]igher [r]ate than Caucasians," see Plaintiff's Response at 9, ECF No. 83, his contention falls short of the statistical evidence needed to make a prima facie showing. See **Wallace v. Magnolia Family Servs., LLC**, 2014 WL 7369673, *3 (E.D. La. Dec. 29, 2014) (rejecting similar claim and holding that "[i]n

---

[4]In his various pleadings, Plaintiff consistently draws a distinction between receiving a suspended imposition of sentence (SIS) and a felony conviction. He apparently contends that the record showing he received an SIS after pleading guilty to a felony charge corrected an erroneous background check showing he had a felony conviction. The Court notes that Mo.Rev.Stat. § 302.592.1 requires the inclusion in Missouri's uniform law enforcement system records of "guilty pleas, findings of guilt, suspended imposition of sentence, suspended execution of sentence, probation, conditional sentences, sentences of confinement, and any other such dispositions that may be required under state or federal regulations." It is not, therefore, at all clear that the background check cited by Griffin was erroneous. This is an issue, however, that need not be resolved for purposes of the pending summary judgment motions. See **Rickard v. Swedish Match North America, Inc.**, 773 F.3d 181, 184 (8th Cir.2014) ("'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

attempting to rely on the fact that it is well known that the percentage of African-American males incarcerated in prison is much higher than the percentage of white males, the authorities are consistent that [a plaintiff] cannot rely on African-American males who have been incarcerated in the national population versus the percentage of white males in the national population to prove the second element of [the prima facie] case").

Disparate Treatment. As noted above, because Plaintiff has failed to present any direct evidence to support his discrimination claims, those claims must be analyzed under the *McDonnell Douglas* burden-shifting framework. **Fiero v. CSG Sys., Inc.**, 759 F.3d 874, 878 (8th Cir. 2014). "Under that framework, '[P]laintiff must first present a prima facie case of intentional discrimination. The burden then shifts to [D]efendant to articulate a legitimate, nondiscriminatory reason for its action. If [D]efendant meets that minimal burden, [P]laintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination.'" **Id.** (quoting Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003)) (last alteration in original). "To establish a prima facie case of gender discrimination, [Plaintiff] must demonstrate that: '(1) [ ]he was a member of a protected class; (2) [ ]he was qualified for [the] job; (3) [ ]he suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination.'" **Id.** (quoting Wells v. SCI Mgmt., L.P., 469 F.3d 697, 700 (8th Cir. 2006)). These same elements govern the establishment of a prima facie case of race discrimination with the last element being to "'provide facts that give rise to an inference of unlawful . . . race discrimination.'" **Robinson v. Am. Red Cross**, 753 F.3d 749, 754 (8th Cir. 2014) (quoting Butler, 708 F.3d at 1050) (alteration in original). Once a plaintiff has established a prima facie case under the

*McDonnell Douglas* framework, a presumption is created "that the employer unlawfully discriminated against the plaintiff and shifts the burden to the employer to articulate a legitimate nondiscriminatory reason for its action." **Ridout v. JBS USA, LLC**, 716 F.3d 1079, 1083 (8th Cir. 2013). "If the employer meets this burden, the presumption of discrimination dissolves and the burden returns to the plaintiff to demonstrate that the proffered reason is a mere pretext for [race or gender] discrimination." **Id.**

"Although evidence of pretext is normally considered at the last step of the *McDonnell Douglas* analysis, pretext can also satisfy the inference-of-discrimination element of the prima-facie case." **Young v. Builders Steel Co.**, 754 F.3d 573, 578 (8th Cir. 2014). "At the inference-of-discrimination stage, '[a] plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.'" **Id.** (quoting Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010)) (alteration in original).

Ms. Mixon-Page avers that Plaintiff was not hired for either job number 12-2819 or 12-3155 because his candidate profile reflected a poor work history. Mr. Dudley, an African-American man, was hired for 12-2819; Ms. Shepard, an African-American woman, was hired for 12-3155. Plaintiff argues that neither has his work experience in collections.

"To prevail on a claim that similarly-situated persons were treated more favorably, Plaintiff "must show the [hirees] were 'similarly in all relevant respects.'" **Id.** (quoting Chappell v. Bilco Co., 675 F.3d 1110, 1119 (8th Cir. 2012)). They were not. Plaintiff applied for the two jobs at issue in November 2012. His previous employment was in an

unrelated field, lasted for approximately five months, and ended almost four years earlier. His next to last employment was for three months and ended more than seven years earlier. He had been discharged from the job before that. Thus, in the approximately eight years between the beginning of that third job and the applications for the November 2012 job, he had almost seven years of unemployment. And, none of the last three jobs were in collections. During that same eight-year period, Mr. Dudley had almost seven years of continuous employment, some in collection work, had never been discharged, had been laid off only seventeen months earlier from his last job, and had also obtained an Associates of Arts degree while working. Ms. Shepard had been continually employed and had work experience in collections.

"Courts 'may not second-guess employers' business decisions,' . . . and 'employers are free to make employment decisions so long as they do not discriminate unlawfully.'" **Robinson**, 753 F.3d at 754 (quoting Haigh v. Gelita USA, Inc., 632 F.3d 464, 471 (8th Cir. 2011)). Thus, "[a]n employer's business decision concerning hiring need not be a good decision to withstand a challenge for sex [or race] discrimination; it is enough that it not be motivated by the gender [or race] of the employee who is adversely affected by the decision." **Brandt v. Shop 'n Save Warehouse Foods, Inc.**, 108 F.3d 935, 938 (8th Cir. 1997). The only evidence that Plaintiff offers in support of his discrimination claim is his contention that he is better qualified because of his work in collections.[5] This is not the "specific, tangible evidence" required to show that he and Mr. Dudley and Ms. Shepard are "'similarly situated'

---

[5]Plaintiff argues that it was this work which caused him to be hired by Defendant in 2007. The Court notes that he had been unemployed then for a little over two years. This gap is more similar to Mr. Dudley's employment gap in 2012 than to Plaintiff's in 2012.

in the relevant respects." **McClure v. Career Sys. Dev. Corp.**, 447 F.3d 1133, 1136 n. 2 (8th Cir. 2006). "Employers are entitled to compare applicants' [qualifications]," **Hunter v. United Parcel Serv., Inc.**, 697 F.3d 697, 705 (8th Cir. 2012), and "[t]he mere existence of comparable qualifications between two applicants [of different race or gender] alone does not raise an inference of [racial or gender] discrimination," **Lidge-Myrtil v. Deere & Co.**, 49 F.3d 1308, 1311 (8th Cir. 1995) (plaintiff's abilities alone did not rebut employer's stated belief that hiree better satisfied employment criteria).[6]

Additionally, the lack of any genuine issue as to the non-discriminatory reason established by Defendant for not considering Plaintiff is underscored by the race of the two people that were hired being the same as Plaintiff's and the gender of one of those two being the same as Plaintiff's. See e.g. **Sprenger v. Federal Home Loan Bank of Des Moines**, 253 F.3d 1106, 1113 (8th Cir. 2001) (rejecting claim of age discrimination when similarly situated employees were in same age group as plaintiff); **Hughes v. Ortho Pharm. Corp.**, 177 F.3d 701, 705 (8th Cir. 1999) (rejecting race discrimination claim of plaintiffs who were replaced shortly after complained-of discharge by person of same race).[7]

Retaliation. Plaintiff alleges that Defendant retaliated against him after he filed his January 2013 charge of discrimination by continuing to ignore his application after he

---

[6]Plaintiff argues that "[a] [b]etter alternative" would have been for Defendant to correctly assess his qualifications to determine if he was the better applicant. (Pl. Resp. at 6.) Whether Defendant made the correct choice, however, is not the issue. It is whether the choice is impermissible under Title VII.

[7]Plaintiff's argument that it is irrelevant that both hirees are African-American and one is a man because neither had a negative background check, see Plaintiff's Response at 5, is without merit for the reasons discussed in the "Disparate Impact" section.

- 13 -

completed and passed an assessment test. The only job at issue is number 12-2819, filled by Mr. Dudley on February 4, 2013, one month after Plaintiff's original EEOC charge. The other job, number 12-3155, was filled by Ms. Shepard one month before Plaintiff's original EEOC charge.

"To establish a retaliation claim under Title VII, a [plaintiff] must show: (1) []he engaged in protected conduct; (2) a reasonable [person] would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." **Musolf v. J.C. Penney Co.**, 773 F.3d 916, 918 (8th Cir. 2014). "When a plaintiff lacks direct evidence of retaliation, the burden-shifting analysis of *McDonnell Douglas* . . . applies. Under *McDonnell Douglas*, [Plaintiff] bears the initial burden of making a prima facie showing of retaliation. If [he] makes this prima facie showing, the burden shifts to [Defendant] to articulate a legitimate, non-retaliatory reason for the adverse action. Once [Defendant] does so, the burden shifts back to [Plaintiff] to put forward evidence of pretext." **Id.** at 918-19.

The unrefuted evidence is that Plaintiff was not considered for an opening in November 2012 because of his work history. The evidence is also that Plaintiff had an assessment score of 100 – the required score is 80 – when he took the assessment twice in early January 2013 for job number 12-2819. (Def. Ex. M, ECF No. 73-13.) This is the same score he attained in March 2012 when he took the assessment for six other job openings. (Id.) The candidate assessment is a series of questions that a candidate answers about his personal background and qualifications. (See Def.'s Ex. N, ECF no. 73-14.) The assessment completed by Plaintiff for the job of bad debt collector included fifteen questions: eight

background questions, e.g., if the candidate gives permission to contact his current employer and if he has ever applied with Defendant before, and seven qualification questions, e.g., if he has experience working with a dialer. (Id. at 1.) The assessment for the job of early out collector includes the eight background questions and four qualification questions. (Id. at 2.) Plaintiff's assessments have a date of March 19, 2013 – two months after the job was filled by Mr. Dudley. Moreover, even if Plaintiff had completed the assessments before the job was filled – he alleges in his third charge of discrimination that he completed the assessments in January 2013 – his favorable answers about his background and qualifications do not refute the reliance Ms. Mixon-Page placed on his work history when screening his candidate profile.

Plaintiff has failed to establish a genuine issue of material fact as to whether he was impermissibly retaliated against.[8]

Reconsideration. In his motion for summary judgment, Plaintiff asks that the Court reconsider its previous ruling dismissing his claims of discrimination and retaliation prior to March 10, 2012, on the grounds that such claims are barred by his failure to timely present them in an administrative charge of discrimination. In his pending motion, Plaintiff argues that he was prevented from timely filing his charge by the severe intimidation of Defendant. Although the timely filing of an EEOC charge is subject to waiver, estoppel, and equitable tolling, **Zipes v. Trans World Airlines, Inc.**, 455 U.S. 385, 393 (1982), Plaintiff's

---

[8]In his answers to Defendant's interrogatories, Plaintiff also claimed that he was retaliated against by the use of an incorrect 2007 background check to keep him from being employed by Defendant in 2012 and 2013. This claim is without merit because he has failed to establish that his background check (a) *was* considered in 2012 and (b) was incorrect.

conclusory allegations of intimidation fail to persuade the Court that its earlier ruling was in error.

## Conclusion

In response to Defendant's evidence that Plaintiff was not hired in November 2012 for a non-discriminatory reason, Plaintiff has "'merely point[ed] to unsupported self-serving allegations'" and has failed to "'substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor.'" **Fatemi**, 775 F.3d at 1040 (quoting Davidson, 422 F.3d at 638). Accordingly,

**IT IS HEREBY ORDERED** that the motion of The Outsource Group for summary judgment is **GRANTED**. [Doc. 72]

**IT IS FURTHER ORDERED** that the motion of Lawrence G. Gray, Jr., for summary judgment is **DENIED**. [Doc. 79]

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  5th  day of March, 2015.